IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

METROPOLITAN LIFE INSURANCE        §
COMPANY                            §
                                   §
VS.                                §   CIVIL ACTION NO. 4:05-CV-782-Y
                                   §
RENEE A. BUCKE, et al.             §

ORDER GRANTING DEFENDANT
SALLIE KIBBIE'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT RENEE BUCKE'S MOTION FOR SUMMARY JUDGMENT

Before the Court are two summary-judgment motions filed by defendants Renee Bucke and Sally Kibbie (docs. ## 20 & 37) in this interpleader cause of action. Both motions call upon the Court to decide which defendant under the Employee Retirement Income Security Act of 1974 is entitled to the proceeds of a life-insurance policy. Plaintiff Metropolitan Life Insurance Company ("MetLife") filed as an interpleader to have the Court determine the rightful beneficiary of a life-insurance policy. Defendant Sally Kibbie ("Kibbie") is the named beneficiary. Defendant Renee Bucke ("Renee") is the surviving spouse of the decedent-insured, Michael Bucke ("Michael"), and a non-beneficiary claimant to the proceeds.

I.   Factual Background

The relevant material facts in this case are undisputed. Michael was a participant in an employee welfare benefit plan (hereafter, sometimes just "plan") provided by his employer, American Airlines. This plan was called: "The Group Life and

Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries" ("the Plan").   Interpleader MetLife is the claims fiduciary for the Plan.

Michael enrolled for $50,400 in basic and $69,100 in optional life-insurance coverage for a total of $119,500 in life-insurance benefits under the Plan.   In 1989, Michael designated his wife, Renee, as the sole beneficiary of the Plan, and informed her of the designation.   But under the terms of the Plan, Michael was free to change his designation at will and without the consent of the beneficiary.

In 2000, Renee filed for divorce in the Superior Court of California.   In connection with the filing for divorce, the California state court issued a "Standard Family Law Restraining Order."   *See* CAL. FAM. CODE § 2040(a)(3).   Among other things, that order provided:

> Starting immediately, you and your spouse are
> restrained from:
>
> 2. . . . changing the beneficiaries of any
> life insurance or other coverage . . . held
> for the benefit of the parties . . . .

Renee, however, never received a qualified domestic relations order ("QDRO") under 29 U.S.C. § 1056(d), and the standard restraining order issued by the California state court does not meet the requirements under 29 U.S.C. § 1056(d) to qualify as a QDRO.

Michael was served with the petition for divorce and the standard restraining order.  Prior to his being served, Renee's attorney sent notice to MetLife informing it of the pending divorce proceedings and that ownership of certain benefits it had issued to Michael were at issue in the proceeding.  The notice instructed MetLife "to maintain the named beneficiaries or covered dependents under the policy unless the terms of the policy or other provisions of law require otherwise . . . ."  And the notice instructed MetLife "to send notice to the named beneficiaries . . . upon . . . change of designated beneficiaries under the policy."

During the pendency of the divorce, Michael resided in Texas, and he was residing in Texas at the time he was served with the divorce papers and the restraining order.  His wife remained in California.

Defendant Kibbie was Michael's "girlfriend/significant other" in Texas.  According to Kibbie, their "relationship had been ongoing for some five years after [Michael] had become estranged from his spouse, [Renee], and her filing for divorce in California."  During this time, Michael became ill and Kibbie "was his primary caretaker."

In 2004, Michael changed the Plan and designated Kibbie as the sole beneficiary of the life-insurance benefits under the Plan.  He did not inform Renee of this change and evidently neither did MetLife.  Michael died in January 2005, while the divorce was still

3

pending.   Renee learned of Michael's change to his beneficiary designation under the Plan after his death.

Kibbie submitted a claim for the Plan benefits in March 2005, as the named beneficiary.   Renee submitted a claim for those benefits in April, on the grounds that she was Michael's spouse at the time of his death and that the state-court restraining order prohibited Michael from removing her as the sole beneficiary under the Plan.

Because of the conflicting claims, MetLife initiated this interpleader to determine the rightful beneficiary under the Plan. MetLife, however, has already paid one-half of the life-insurance benefits to Kibbie.   According to MetLife, before initiating this action it "denied [Renee's] claim to one-half of the Plan benefits due to [Michael's] 2004 beneficiary designation naming [Kibbie] as the sole beneficiary of the Plan benefits."   MetLife provides no explanation for its decision to pay one-half of the proceeds to Kibbie knowing there was a dispute as to the rightful beneficiary under the Plan, but retaining the other half of the benefits and interpleading to determine the rightful beneficiary of all of the benefits.   Nevertheless, in March 2006, this Court granted MetLife's motion to deposit the remaining half of the insurance benefits into the Court registry for distribution to the party legally entitled to them.   MetLife made that deposit in May.

II.   The Law

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In this case, the parties agree as to the material facts that inform the Court's decision, including that the Plan is governed by ERISA and that Michael had changed the beneficiary under that Plan in violation of the California state-court restraining order.  The parties' dispute presents a legal question: under the undisputed facts, who is entitled to the proceeds of the insurance policy?

Both defendants agree that the Plan is an employee welfare benefit plan as defined and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. They also agree that the California state court's standard restraining order is not a QDRO because it fails to meet the requirements of ERISA, 29 U.S.C. § 1056(d)(3).  As well, both agree that the California state court's standard retraining order, to the extent that it prohibits Michael from changing the beneficiary of the policy, is preempted by ERISA.  And both argue that the cases of *Central States Southeast & Southwest Areas Pension Fund v. Howell,* 227 F.3d 672 (6th Cir. 2000), and *Sun Life Assurance Company of Canada v. Dunn,* 134 F. Supp. 2d 827 (S.D. Tex. 2001), should be followed in determining the issue in this case.   The

5

defendants disagree as to what that determination should be, however.  Accordingly, a discussion of these cases is necessary.


A.   Relevant Cases

1.   *Central States Southeast & Southwest Areas Pension Fund v. Howell,* 227 F.3d 672 (6th Cir. 2000)

In *Central States*, Kenneth and JoAnn Howell were married in 1978.  Kenneth Howell had three children from a prior marriage. JoAnn Howell filed for divorce in 1994 in Michigan.  The Michigan divorce court prohibited both of the Howells from "acting to dispose of . . . any of the [parties'] marital assets . . . during the pendency of the divorce proceedings."  *Central States,* 227 F.3d at 673.  Despite the court's order, Kenneth changed the beneficiary designation on three life-insurance policies from JoAnn to the children of his prior marriage.  One of the life-insurance policies was secured through the Central States Southeast and Southwest Areas Health & Welfare Fund ("Central States") and fell under ERISA.  Kenneth died while the divorce was still pending.

After his death, Kenneth's children made demand upon Central States for the insurance benefits.  Concerned as to whether JoAnn or the children were the rightful beneficiaries of the policy, Central States interpled in federal court.

The United States Court of Appeals for the Sixth Circuit concluded that ERISA preempted the state court's restraining order.

*Id.* at 678.   The Sixth Circuit reasoned that the state court's order was a state law that related to an ERISA plan, and that it did not meet the requirements of a QDRO sufficiently to except it from ERISA's preemptive effect.   *Id.* at 676, 678; *see also* 29 U.S.C. §§ 1144(a)(preemption language), 1144(b)(7)(excepting QDROs from preemption), 1056(d)(3)(listing the requirements of a QDRO). Under Sixth Circuit law, the ERISA plan fiduciary is required to pay out life-insurance proceeds in strict compliance with the plan documents.   *Central States,* 227 F.3d at 678.   The Sixth Circuit interprets ERISA section 1104, which states that "a fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . .," as setting forth a clear mandate that plan fiduciaries must disburse life-insurance benefits to the beneficiary designated in the plan documents and only in accordance with the plan documents.   *Id.; see also Metropolitan Life Insurance Company v. Marsh,* 119 F.3d 415 (6th Cir. 1997); *Manning v. Hayes,* 212 F.3d 866, 871 (5th Cir. 2000)(explaining Sixth Circuit law).

But the Sixth Circuit found "no precedent binding on this Court on the issue of whether, once the beneficiary is determined, ERISA preempts all causes of action and possible remedies based upon state law that might be traced to the ERISA plan proceeds."

*Central States,* 227 F.3d at 678.  Thus, the Sixth Circuit looked to and followed the Tenth Circuit case of *Guidry v. Sheet Metal Workers National Pension Fund,* 39 F.3d 1078, 1081-83 (10th Cir. 1994)(*en banc* decision after remand)("*Guidry II*").

The Supreme Court had remanded *Guidry* back to the Tenth Circuit after it reversed that circuit's holding that a constructive trust could be imposed on ERISA pension-plan benefits.  *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 376-77 (1990)("*Guidry I*").  The Supreme Court held that ERISA section 1056(d)(1) precludes the imposition of a constructive trust on pension-plan benefits.  The Supreme Court concluded that ERISA's anti-alienation provision contains numerous exceptions, but that none applied to the circumstances of the *Guidry* case.  Because of this, the Supreme Court concluded that the anti-alienation provision reflected,

> a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done to them.  If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Id.* at 376.

After the Supreme Court remanded *Guidry*, the Tenth Circuit considered whether a constructive trust could be imposed on ERISA pension benefits <u>after</u> they have been distributed to the benefi-

ciary, and decided that it could be. *Guidry II,* 39 F.3d at 1081-83. Thus, although ERISA's anti-alienation provision "precluded the imposition of a constructive trust <u>before</u> distribution of benefits to the beneficiary, . . . nothing in the legislative scheme prevented the imposition of a constructive trust <u>after</u> the benefits were paid to the beneficiary of the pension benefits." *Central States,* 227 F.3d at 678.

The Sixth Circuit found the Tenth Circuit's reasoning persuasive and followed it, adding that "the district court has the discretion to impose a constructive trust upon [plan] benefits in accordance with applicable state law if equity so requires." *Id.* at 679. The appellate court then remanded the case to the district court for consideration of whether a constructive trust in favor of JoAnn Howell should be imposed under the principles of equity under Michigan law. *Id.*


2.  *Sun Life Assurance Company of Canada v. Dunn,* 134 F. Supp. 2d 827 (S.D. Tex. 2001)

In *Sun Life,* a final divorce decree named defendant Marcia Dunn as the sole managing conservator for her and John Dunn's child, Kelly. In addition to requiring John to pay child support, the divorce decree required him to maintain life insurance for no less than $200,000 and to name Kelly as the irrevocable beneficiary and Marcia as trustee. One of the policies John took out to comply

with the order was a $160,000 life-insurance policy administered by Sun Life Assurance Company of Canada ("Sun Life"). This policy constituted an ERISA-governed employee welfare benefit plan. Although John initially named Kelly as the primary beneficiary, he later changed the beneficiary designation, making Kelly a secondary beneficiary. As a result, John was in violation of the divorce decree because he failed to maintain the requisite amount of life insurance and name Kelly the beneficiary.

John's action went undetected until his death. At that time, Kelly was designated to receive approximately $59,200 in life-insurance proceeds.

Sun Life filed an interpleader to determine the proper recipient of the life-insurance proceeds under the ERISA policy. After concluding that ERISA preempted the divorce decree to the extent that the decree applied to John's Sun Life policy, the district court held, nonetheless, that the divorce decree vested Kelly with an "equitable interest in the Sun Life policy." *Id.* at 837. The court then decided that Kelly had established the elements for the imposition of a constructive trust under Texas law, and imposed one on the policy proceeds for her benefit. *Id.*

10

B.   The Parties's Construction of the Relevant Cases

1.   Renee's Arguments

Relying on *Central States* and *Sun Life*, Renee argues that "under principles of equity," ERISA does not preempt "the imposition of a constructive trust on benefits" after the benefits have been distributed to the designated beneficiary under the Plan. (Defendant Renee Bucke's Brief Supp. Summ. J. 6.)   Renee contends that she is entitled to a constructive trust under Texas law because Kibbie would be unjustly enriched if allowed to retain the benefits.   Renee argues,

> A court is permitted to impose a constructive trust on the proceeds of an insurance policy paid to a "totally innocent beneficiary" of a wrongful act, if a non-designated beneficiary can show that a designated beneficiary would be unjustly enriched because of such wrongful act.

(Defendant Renee Bucke's Brief Supp. Summ. J. 7.)   According to Renee, her husband was under a state-court order not to change the beneficiary under any of his life-insurance policies, including his policy under the Plan, but that without notifying her, he did so anyway "in contempt of that court."   *Id.*   Because, she argues, Kibbie received one half of the benefits under the Plan by the wrongful act of Michael, "Kibbie has been unjustly enriched."   *Id.* Thus, she concludes,

> Under the equitable doctrine of constructive trust, [Kibbie] should be required to hold the funds that she has already received as a

11

result of [Michael's] violation of a court
order, in trust for [Renee] and should be
ordered to turn those funds over, pursuant to
the status guaranteed [Renee] by the order of
the California court . . . . Likewise, [Rene-
e] is equitably entitled to the funds
interplead into the registry of the Court.

(Defendant Renee Bucke's Brief Resp. Summ. J. 7-8.)


2.   Sally Kibbie's Arguments

Naturally, Kibbie sees it differently; see contends that Renee

"and/or her legal counsel do not understand the [Sixth Circuit's]

findings and ruling." (Defendant Sally Kibbie's Resp. Summ. J. 4.)

Kibbie argues that she is the rightful beneficiary under the Plan

because the state-court restraining order is preempted by ERISA and

thus "[Michael] acted lawfully in designating [her] as the . . .

beneficiary . . . ." *Id.*

Kibbie also argues that under the principles of equity, a

constructive trust is inappropriate.  Kibbie contends that Michael

and Renee had been estranged for five years and did not live

together; Kibbie was the one who cared for Michael throughout his

illness that regrettably claimed his life; and, she maintains that

Renee "has already received substantial financial proceeds from

other retirement/pension plans established by [Michael] through

American Airlines." (Defendant Sally Kibbie's Resp. Summ. J. 7-8.)

Therefore, Kibbie argues,

> If the rules of equity are to be applied, the wishes of [Michael] should be honored, and this Court should summarily determine that Kibbie is the rightful recipient of the insurance proceeds in issue because she was his friend and caretaker.

(Defendant Sally Kibbie's Resp. Summ. J. 7-8.)

Finally, Kibbie ends by inexplicably quoting the following passage from *Sun Life*:

> When Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefits plans, and not ERISA welfare benefit plans.  In a comprehensive regulatory scheme like ERISA, such omissions are significant ones. (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 837 (1988)).

134 F. Supp. 2d at 836. (Defendant Sally Kibbie's Resp. Summ. J. 8.)  From that passage, the district court concluded that, "There is therefore a presumption of free alienation of ERISA welfare benefits." *Sun Life,* 134 F. Supp. 2d at 836.

Kibbie fails to inform the Court as to why the Supreme Court passage from *Mackey* quoted in *Sun Life* furthers her position.  She simply ends her brief with that passage. But in both of those cases, the designated beneficiary of the welfare plan benefits was "alienated" from the benefits in favor of a non-designated beneficiary.  That is precisely what Renee hopes to achieve over the objection of Kibbie.

C.   Analysis

ERISA is the principle federal statute that governs employee benefit plans.  *See* 29 U.S.C. § 1001, *et seq*.  Under ERISA, plans fall into two categories: "employee pension benefit plans" and "employee welfare benefit plans."  *See* 29 U.S.C. § 1002.  The Court agrees with the defendants that the Plan at issue here is an employee welfare benefit plan governed by ERISA.  Under 29 U.S.C. § 1002(1), an employee welfare benefit plan is, among other things:

> any plan . . . established or maintained by an employer . . . to the extent that such plan . . . was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . death . . . .

The Court also agrees with the parties that ERISA preempts the California state court's restraining order to the extent it prohibits Michael from changing the beneficiary under the Plan. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law . . . ."  29 U.S.C. § 1144(c)(1).  Thus, a state-court order, such as a temporary restraining order having the effect of law, is preempted by ERISA insofar as it relates to an employee benefit plan.

14

The Supreme Court has held that "a state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff,* 532 U.S. 141, 147 (2001)(internal quotations and citations omitted).  And the Fifth Circuit has held "that a state law governing the designation of an ERISA beneficiary 'relates to' the ERISA plan, and is therefore preempted." *Manning v. Hayes,* 212 F.3d 866, 870 (5th Cir. 2000).

Here, the California restraining order forbids Michael from freely changing his designated beneficiary under the Plan. According to the Plan documents, Michael was free to change his beneficiary at will and without the consent of the designated beneficiary.  The California restraining order, if effective, would frustrate a right Michael enjoys under the terms of an ERISA plan. Also, the California restraining order effectively voids Michael's change of beneficiary and reinstates his original designation of Renee.   Thus, the Court agrees with the defendants that ERISA preempts the California state court's standard restraining order.

Having determined that ERISA preempts the California order, thereby rendering it powerless over Michael's beneficiary designa-tion, the Court must decide whether Renee, as a non-beneficiary claimant, is nevertheless entitled to the proceeds of the Plan. The Court concludes that she is not.

The Fifth Circuit has held that "ERISA does not expressly address the circumstances, if any, in which a non-beneficiary may

avoid the payment of life insurance benefits to the named benefi-
ciary." *Manning*, 212 F.3d at 871; *see also*, *The Guardian Life
Insurance Company of America v. Finch*, 395 F.3d 238, 242-43 (5th
Cir. 2004)(holding *Egelhoff* does not undermine holding); *Brandon v.
The Travelers Insurance Company*, 18 F.3d 1321, 1325 (5th Cir.
1994).  The Fifth Circuit has repeatedly rejected the contention
that ERISA section 1104(a) "expressly provides the statutory rule
for resolving competing claims to insurance proceeds . . .," and
has expressly rejected "the bright-line rule" that "the named
beneficiary must always prevail, without regard to any other
circumstances or provisions of law." *Manning*, 212 F.3d at 871-72;
*Clift v. Clift,* 210 F.3d 268 (5th Cir. 2000); *Finch,* 395 F.3d at
239-40); *Brandon,* 18 F.3d at 1327.  Thus, the Fifth Circuit
"follows the majority approach by applying federal common law to
disputes between a non-beneficiary claimant and the named ERISA
beneficiary to life insurance proceeds, and neither the express
language of ERISA nor the Supreme Court's [decisions] require that
we abandon that approach . . . ." *Manning,* 212 F.3d at 874.

When ERISA preempts state law like the California restraining
order at issue here, the Court is required to apply federal common
law to determine who is the appropriate beneficiary under the Plan.
*Finch,* 395 F.3d at 240.  The Court must first look to the ERISA
statute, but if it is silent on the issue, then the Court may look
to federal common law "as long as the federal common law rule

16

created is compatible with ERISA's policies." *Cooperative Benefit Administrators, Inc. v. Ogden,* 367 F.3d 323, 329 (5th Cir. 2004).

In applying federal common law, the Court "may draw guidance from analogous state law." *Brandon,* 18 F.3d at 1325; *see also, Manning,* 212 F.3d at 874.  But federal common law "cannot be defined solely by reference to the law of but a single state." *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, et al.,* 354 F.3d 348, 359 (5th Cir. 2003).

In *Brandon,* the court held that ERISA preempted a divorce decree that awarded Richard Brandon all right, title, interest, and claim in any employee benefit plan.  Richard had named his wife, Wanda Brandon, as the beneficiary on a life-insurance policy provided by his employer.  When Richard petitioned for divorce, he and Wanda agreed to a property division that included Wanda's relinquishment of any claim to the policy's proceeds.  The state court accepted the parties' agreement dividing the property and entered a divorce decree incorporating that agreement.  Richard, however, failed to remove Wanda as a beneficiary under his employee insurance policy.  After his death, Wanda filed a claim for the proceeds, but was denied because of the divorce decree.

The Fifth Circuit held that ERISA preempted the divorce decree. *Brandon,* 18 F.3d at 1325.  But the court did not end its inquiry there.  After expressly rejecting the notion that ERISA section 1104(a) required insurance proceeds of an ERISA welfare

benefit plan to be paid to the named beneficiary, the court applied federal common law and determined that Wanda had waived any right or claim to the benefits.  *Id.* at 1326.  The court held, "The divorce decree was a bona fide waiver of her rights to the insurance policy proceeds and we are bound to carry out the provisions of the agreement signed by the parties." *Id.* at 1327. As a result, though the named beneficiary, Wanda did not receive the benefits of the ERISA life-insurance policy.  *See also Finch,* 395 F.3d at 243 (affirming district-court decision that ERISA preempted divorce decree but that ex-spouse had waived any rights to insurance policy proceeds and thus ordered the proceeds paid to a non-beneficiary).

In its fashioning of the federal common law of waiver, the Fifth Circuit looked to a Texas statute that creates a presumption of waiver of benefits absent a redesignation following a divorce. *Id.* at 1326.  Although the Fifth Circuit drew from the Texas statute, it stopped short of a wholesale adoption:

> In this case . . . we adopt the Texas rule
> creating a presumption of waiver absent
> redesignation following divorce. . . . How-
> ever, in looking to state family law for
> guidance, we recognize that wholesale adoption
> of the Texas redesignation statute will not
> sufficiently protect the interests of benefi-
> ciaries.  Thus, in our fashioning of federal
> common law, we modify the adoption of state
> law to require that any waiver be voluntary
> and in good faith.

18

*Id.*   Thus, the clear instruction is that while the Court may and should look to state law in the formulation of federal common law, it must also insure that the policies and objectives of ERISA are protected when fashioning federal common law to address matters as to which ERISA is silent.

In fashioning and applying this federal common law of waiver, the Fifth Circuit harmonized two competing yet compelling policy objectives.  It recognized that "the law of family relations, which includes an individual's right to expressly apportion property upon divorce, has traditionally been a fairly sacrosanct enclave of state law."  *Manning,* 212 F.3d at 872.  On the other hand, the Fifth Circuit recognized that Congress passed ERISA to "protect . . . participants in employee benefit plans and their beneficiaries . . . ."  29 U.S.C. § 1001(b); *Id.*   The Fifth Circuit's federal common law of waiver champions both policy objectives.

It has been almost universally recognized that, upon divorce, each spouse no longer desires to inherit from the other or to have the ex-spouse remain as a beneficiary.  *See Egelhoff,* 532 U.S. at 158-59 (Breyer, J., dissenting).  Following this recognition, many states, like Texas and Washington as mentioned in *Manning* and *Egelhoff,* have adopted statutes that automatically revoke the designation of a spouse as a beneficiary on a life-insurance policy upon divorce.  In essence, absent any evidence to the contrary, these statutes presume that upon divorce, an insured no longer

19

desires to have the insured's spouse remain as his beneficiary. Thus, the federal common law of waiver, as applied in *Brandon*, protects the right of individuals to apportion property upon divorce by giving effect to a divorce decree that incorporates a property-settlement agreement that the spouses entered into voluntarily and in good faith. At the same time, the Fifth Circuit's federal common law of waiver protects participants in employee benefit plans and their beneficiaries by recognizing that, upon divorce, the participant no longer desires to have the participant's spouse remain as a beneficiary.

Renee, by contrast, invites the Court to apply principles of equity to void a <u>desired</u> beneficiary designation, thereby giving roundabout effect to an ERISA-preempted state-court restraining order. Unlike the participants in *Brandon*, who are presumed to no longer desire to have their spouses remain as their beneficiaries, here, Michael specifically and intentionally designated Kibbie as his beneficiary on his ERISA-governed life-insurance policy. Thus, the fashioning of federal common law in this case to require the imposition of a constructive trust (an equitable remedy) would further the goal of recognizing family law as a sacrosanct enclave of state law, but do so at the expense of ERISA's goal of protecting participants and their beneficiaries. For that reason, the Court concludes that accepting Renee's invitation to impose a constructive trust on the Plan's proceeds for her benefit would be

inappropriate.   In reality, Renee is requesting that the Court carve out an equitable exception to ERISA's legislative requirements.   This the Court will not do.

The Supreme Court has stated that there is "a presumption against preemption in areas of traditional state regulation such as family law." *Egelhoff,* 532 U.S. at 151.  But that is nothing more than a presumption that "can be overcome where . . . Congress has made clear its desire for preemption." *Id.*  Such a clear indication is present here.

ERISA commands that a plan shall "specify the basis on which payments are made to and from the plan."  29 U.S.C. § 1102(b)(4). And as noted above, ERISA section 1104 requires employee benefit plan fiduciaries to discharge their duties in accordance with the plan's documents and instruments.   Here, the Plan documents and instruments specifically gave Michael the right to change his beneficiary designation at will and without the consent or knowledge of his previously designated beneficiary.   MetLife was required under section 1104 to honor Michael's change in his beneficiary designation from his wife, Renee, to his companion, Kibbie.   And ERISA is designed to protect Michael and his choice as to his designated beneficiary.   This protection includes preempting any state law that is to the contrary.

The Court notes that, at first blush, Renee presents compelling arguments that there are strong equities that weigh in her

favor.  The "sacrosanct enclave" recognized in *Brandon* has included the state's apportioning of property upon a divorce and the right of a spouse, such as Renee, to have the marital estate preserved for equitable distribution upon divorce.  Michael was properly served with a petition for divorce accompanied with a restraining order that legitimately sought to preserve the status quo between the divorcing parties by ordering both parties, among other things, not to make any changes to any life-insurance policies.  This included not only changing any designated beneficiaries, but also doing anything that would diminish the value of any policy.  The purpose of the restraining order was to preserve the status quo as to the marital property, thereby preserving the marital estate for later equitable distribution.  And it is undisputed that Michael ignored that restraining order and changed the beneficiary under the Plan.  Save only ERISA's intervention, Michael had a legal obligation to refrain from changing his beneficiary and to preserve the status quo until the divorce was final.  *See Estate of Ronald D. Fuller,* 2005 Cal.App.Unpub. LEXIS 3380 (Cal. Ct. App. 1st Dist. Apr. 18, 2005)(holding redesignation of beneficiary of life-insurance policy in violation of family-law standard restraining order was invalid).  Arguably, intentionally ignoring the restraining order and secretly changing the beneficiary, Michael committed a fraud upon Renee and the California state court.

In essence, Michael has converted ERISA preemption from a shield into a sword.  The goal of ERISA's preemption was to shield it from the differing "legal obligations in different States," and to ensure the uniform administration and enforcement of the statutory scheme.  *Egelhoff,* 532 U.S. at 148.  It was not meant to be perverted by a participant and used as a mechanism (to the detriment of the participant's spouse) to defy a state-court restraining order designed to preserve the marital estate.

While these are strong equities that weigh in favor of Renee, the California court is not as powerless as Renee would have one believe.  True, the California court is powerless to reach Michael's employee insurance policy, but the state court could still consider the value of that property and factor that into the equitable distribution of other assets in the marital estate.  And although Renee has lost any claim in the proceeds of the Plan, she, and not Kibbie, presumably (neither party indicates that a will left anything to another) stands to inherit all or most of the remaining assets in the marital estate.

Moreover, the Supreme Court has made clear that "courts should be loath to announce equitable exceptions to legislative require-ments or prohibitions [where such requirements and prohibitions] are unqualified by the statutory text."  *Guidry I,* 493 U.S. at 376.  Certainly, the equities in this case are no more compelling than the equities in the *Guidry* case.  There, Guidry was a union

fiduciary who had been convicted of embezzling from his union's pension fund at the expense and detriment of many of the union's members.  Perhaps their only chance for restitution lay in their ability to attach Guidry's pension benefits.  The High Court concluded, nonetheless, that the benefits could not be alienated, and noted that "understandably, there may be a natural distaste for the result we reach here.  The statute, however, is clear." *Id.* And what *Guidry* teaches is that courts should not substitute equity for the policy considerations and determinations of our elected officials in Congress.  The outcomes in cases like *Guidry* and this one, which are controlled by laws duly enacted through the democratic process, are for Congress to address—not the courts.

Unfortunately for Renee, the unqualified statutory text is clear here as well; the Plan must be enforced in accordance with its documents and instruments, and Michael's designated beneficiary must be protected.  ERISA commands that any state law that attempts to diminish a participant's freedom to designate whomever he wishes as a plan beneficiary is preempted.

Thus, Michael had the legal right to remove Renee as a beneficiary without her consent or knowledge.  Because Michael acted lawfully and exercised rights that are federally protected under ERISA, the Court cannot invalidate Michael's action because it appears to be inequitable.  "It makes little sense to adopt such a policy and then refuse enforcement whenever enforcement appears

24

inequitable." *Id.*   Applying that notion here, it makes little sense to say on the one hand that Michael acted lawfully, but on the other, because his lawful acts appear to be inequitable, the Court will refuse enforcement.

III.  Conclusion

For the foregoing reasons, the Court GRANTS defendant Sally Kibbie's summary-judgment motion and DENIES defendant Renee Bucke's summary-judgment motion.   The funds currently being held in the Court's registry, plus all accrued interest, shall be paid to defendant Kibbie.   Further, all costs under 28 U.S.C. § 1920 are taxed against the party that incurred them.

SIGNED March 9, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE